Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Tuesday, May 19, 2009 9:05:43 AM

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CHEYENNE SALES COMPANY, INC., ) | Case No. 09-741 |
| ) | |
| Debtor . ) | Chapter 7 |

### MEMORANDUM OPINION

On June 12, 2007, Joseph and Dominick LaRosa (collectively "JDL") filed a civil action in federal district court, *LaRosa v. Pecora*, No. 1:07-cv-00078 (N.D.W. Va.), to recover allegedly fraudulent transfers made by Virgil and Loan LaRosa to Cheyenne Coal Sales, Inc. (the "Debtor"), and to individual family members (the "individual defendants").[1] On April 2, 2009, shortly before trial of the fraudulent transfer action, the Debtor filed its Chapter 7 bankruptcy petition. The Debtor and the individual defendants now seek a declaration from this court that the automatic stay of the Bankruptcy Code prevents JDL's fraudulent transfer action from moving forward against them in federal district court.

For the reasons stated herein, the court concludes that the automatic stay prevents JDL's fraudulent transfer action from proceeding to trial until such time as the automatic stay is lifted or otherwise modified.

### I. BACKGROUND

According to JDL's June 12, 2007 complaint, JDL obtained a November 3, 1994 judgment against Virgil and Joan Larosa for $2,844,612. Virgil and Joan LaRosa are the sole shareholders of

---

[1] The individual defendants are Andrea Pecora, Jennifer Ward, Chris Ward, Virgil David LaRosa, and Sandra LaRosa.

the Debtor. After obtaining the judgment, JDL asserts that Virgil and Joan LaRosa engaged in a calculated series of transaction to remove their assets to the Debtor and to the individual defendants, who are all family members of Virgil and Joan LaRosa, in an attempt to thwart JDL from collecting on its judgment.

On December 10, 2007, the individual defendants answered JDL's complaint and filed a cross-claim against the Debtor. According to the cross-claim, the individual defendants assert that, in the event they are found liable to JDL, such liability will have been incurred based solely on the alleged acts or omission of the Debtor, such that the individual defendants are entitled to complete indemnification and/or contribution from the Debtor for any judgment against them. On February 5, 2008, the Debtor answered the cross-claim admitting liability to the extent that JDL's complaint alleged activities or conduct associated with the business affairs of the Debtor. In addition, the Debtor also noted that it had affirmatively assumed the defense of the litigation against the individual defendants.

Consistent with the terms of the Debtor's answer on the cross-claim, on March 26, 2009, the Debtor consented to entry of judgment against it. Consequently, the individual defendants are entitled to indemnification and contribution from the Debtor for any judgment entered against them in the fraudulent transfer action. On April 2, 2009, the Debtor filed its Chapter 7 bankruptcy petition. Trial of the fraudulent transfer action in district court was scheduled to begin on April 6, 2009, but was then rescheduled for May 27, 2009, in light of the Debtor's bankruptcy filing, and the filing of a motion to declare the automatic stay applicable to the lawsuit against the non-debtor, individual defendants.

## II. DISCUSSION

No party disputes that JDL's fraudulent transfer action against the Debtor cannot proceed unless the automatic stay of the Bankruptcy Code is modified to allow the litigation to move forward against the Debtor. The Debtor and the individual defendants argue, however, that JDL is also prohibited from pursuing the fraudulent transfer litigation against the non-debtor, individual defendants. Among other things, the Debtor and the individual defendants contend that the Debtor's consent to judgment on the individual defendants' cross-claim creates an unusual situation whereby any judgment that might be obtained against the individual defendants is also a judgment against the

Debtor.

It is axiomatic that the plain language of 11 U.S.C. § 362(a) makes the automatic stay applicable to the debtor and to property of the bankruptcy estate. The purpose of the automatic stay "is to allow for a systematic, equitable liquidation proceeding by avoiding a 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.'" *Safety-Kleen, Inc. v. Wyche*, 274 F.3d 846, 864 (4th Cir. 2001) (citation omitted). Among other things, the automatic stay prohibits "the . . . continuation . . . of a judicial . . . action . . . against the debtor that was . . . commenced before the commencement of the case under this title . . . ." § 362(a)(1). Subsection 362(a)(1) of the automatic stay is generally stated to be applicable only to the debtor – not third party defendants or co-defendants. *E.g.*, *Williford v. Armstrong World Industries, Inc.*, 715 F.2d 124, 126 (4th Cir. 1983) (stating that the "insulation [of § 362(a)(1)] belongs exclusively to the 'debtor' in bankruptcy."). Nevertheless, the automatic stay of § 362 can apply to non-debtor third parties in "unusual situations." According to the Court of Appeals for the Fourth Circuit, "[a]n illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case." *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986). "To refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute." *Id.* *See also In re Queenie, Ltd, v. NYGuard Int'l*, 321 F.3d 282, 287-88 (2d Cir. 2003) ("The automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate. Examples are a claim to establish an obligation of which the debtor is a guarantor, a claim against the debtor's insurer, and actions where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant . . . .'").

Here, JDL filed the federal district court fraudulent transfer action on June 12, 2007, against the Debtor and the individual defendants. On December 10, 2007, the individual defendants filed an answer, and a cross-claim against the Debtor, asserting that the individual defendants were entitled to complete indemnification and contribution for any judgment against them in favor of JDL. On March 26, 2009, the Debtor confessed judgment on the cross-claim; consequently, any judgment against the individual defendants in the fraudulent transfer action is a claim against the Debtor, and

both the Debtor and the individual defendants share an identity such that the Debtor may be said to be the real party defendant. A judgment against the individual defendants will, in effect, be a judgment or finding against the Debtor. This "unusual situation" is sufficiently identical to the one set forth in *A.H. Robins Co.*, *supra*, wherein the Fourth Circuit held that to refuse application of the automatic stay to the non-debtor defendants would defeat the very purpose of the statute. This court can find no valid basis for departing from the Fourth Circuit's analysis in this case.

### III. CONCLUSION

The court will enter a separate order declaring that JDL's district court fraudulent transfer action pending against the individual defendants is subject to the Bankruptcy Code's automatic stay, and is prohibited from moving forward in the absence of the stay being modified or lifted.